1  Richard W. Osman, State Bar No. 167993
   Sheila D. Crawford, State Bar No. 278292
2  Corey C. Wilson, State Bar No. 332800
3  BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
   2749 Hyde Street
4  San Francisco, California 94109
   Telephone: (415) 353-0999
5  Facsimile:  (415) 353-0990
   Email:      rosman@bfesf.com
6              scrawford@bfesf.com
7              cwilson@bfesf.com

8  Attorneys for Defendants
   CITY OF VALLEJO, COLIN EATON and
9  JORDON PATZER

10
11                          UNITED STATES DISTRICT COURT
12                          EASTERN DISTRICT OF CALIFORNIA

13  DEYANA JENKINS, an individual,              | Case No. 2:19−cv−01896−TLN−SCR

14         Plaintiff,                           | **DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)**
15  v.
16  CITY OF VALLEJO, a municipal corporation;
    ANDREW BIDOU, in his individual capacity
17  as Chief of Police; COLIN EATON, in his     | Date: July 31, 2025
    individual capacity as Police Officer for the | Time: 10:00 a.m.
18  CITY OF VALLEJO; JORDON PATZER, in          | Place: Courtroom 27, 8th Floor
    his individual capacity as Police Officer for the |        501 I Street
19  CITY OF VALLEJO and DOES 1-50,              |        Sacramento, California 95814
20  inclusive.

21         Defendants.                          | **Hon. Sean C. Riordan**

22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................................... 1

III.  LEGAL ARGUMENT ............................................................................................................ 5

      A.    Legal Standard ............................................................................................................. 5

      B.    Plaintiff's *Monell* Claim Does Not Include Racial Profiling and Allegations
            Related to Employment Discrimination Are Not Proportional to the Needs of this
            Case .............................................................................................................................. 6

      C.    Plaintiff Could Have Deposed the Requested Individuals and Instead Elected to
            Pursue Irrelevant Testimony......................................................................................... 7

      D.    Good Cause Does Not Exist to permit Plaintiff to Take the Requested Additional
            Depositions .................................................................................................................. 8

            1.    Joseph Gomez .................................................................................................. 8

            2.    District Attorney Krishna Abrams ................................................................... 9

            3.    Judge Kelly Trujillo......................................................................................... 9

            4.    Christina Lee ................................................................................................. 10

            5.    Jason Scott ..................................................................................................... 11

            6.    Captain Lee Horton ....................................................................................... 12

            7.    PMK On Tort Claims/IA Pro ......................................................................... 13

IV.   CONCLUSION .................................................................................................................... 13

i

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S
MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

# TABLE OF AUTHORITIES

**Cases**

*American Cas. Co. of Reading, Pa. v. Krieger*,
   160 F.R.D. 582, 587 (S. D. Cal. 1995).................................................................................10

*Estate of Osuna v. County of Stanislaus*,
   392 F.Supp.1162, 1172 (E.D. Cal. 2019) ...............................................................................6

*Thyukkuttathil v. Keese*,
   294 F.R.D. 601, 602 (W.D. Wash., Nov. 13, 2013).................................................................5

ii

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Plaintiff DEYANNA JENKINS is attempting to turn this limited excessive force case into a license to conduct a virtually limitless fishing expedition to fuel Plaintiff's counsel's litigation against the CITY OF VALLEJO in other matters.  Plaintiff's discovery to date has far exceeded the bounds of what is proportional for the needs of this litigation.  She has taken or will take the depositions of multiple individuals hired after the subject incident occurred who have no involvement whatsoever in the subject incident and no knowledge of the culture, customs, or policies in place at the time of the incident.  Plaintiff's counsel has devoted significant time in at least one deposition delving into her own personal interactions with Vallejo police officers on social media, entirely unrelated to this case.  Plaintiff has attempted, and is attempting, to conduct extensive discovery into alleged employment discrimination, harassment, and retaliation matters with no connection whatsoever to the officers involved, the incident itself or, in some cases, even the Vallejo Police Department.  Despite having already been afforded substantial latitude for this irrelevant discovery, Plaintiff now seeks leave of court to conduct an additional **seven** depositions.  Taking 17 depositions in this case, which stems from a traffic stop, Plaintiff resisting officers and the resulting use of force, is the very definition of harassing and burdensome.  Such harassing, burdensome and unproportional discovery should not be permitted.  Plaintiff's motion should be denied.

## II.     STATEMENT OF FACTS

Plaintiff alleges causes of action of action for (1) Excessive Force under 41 U.S.C. §1983 against Defendants Officer COLIN EATON and Officer JORDON PATZER; (2) *Monell* violations against the City for excessive force; (3) Negligence against EATON, PATZER, and the CITY; (4) Bane Act violations against EATON, PATZER, and the CITY; (5) Battery against EATON, PATZER, and the CITY; and (6) Assault against EATON, PATZER, and the CITY. (First Amended Complaint ("FAC"), Dkt. No 35.)   The FAC alleges that the City has a "culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference, the use of excessive force and the fabrication of official reports to cover up the Defendants' and DOES 1-25's inclusive, misconduct". (FAC at 7:4-6.)  It alleges

1

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

that the City "exhibits a pattern and practice of using excessive force and misconduct against citizens" and that it had a culture of "deliberate indifference towards protecting citizen's rights". (FAC at 7:21-22; 8:1-2.) It included allegations of 19 different incidents of alleged excessive force to support the custom, policy, and practice claims. (FAC at ¶28.) While there are some conclusory allegations of racial profiling elsewhere in the FAC, they are entirely absent from the *Monell* claim section. The *Monell* section alleges the City was on notice of "***repeated acts of unconstitutional excessive force***", had training defects "including but not limited to ***unlawfully using excessive force*** to make detentions and/or arrests", and that these deficiencies "resulted in the deprivation of Plaintiff's constitutional rights including, but not limited to the right to ***be free from excessive force by Officers***". (FAC at 18:10-12; 19:1-9 (emphasis added).)

The CITY moved to dismiss the FAC, including the *Monell* claim. (Dkt. No. 38.) In Plaintiff's Opposition to the Motion to Dismiss, she cited as support for her *Monell* claim allegations that the CITY'S "long documented history, pattern and practice of ignoring, encouraging and promoting ***excessive force violations and cultures*** in the department is well known" and that the CITY'S "steadfast denial and/or refusal to properly train, supervise, and/or discipline its Officers ***for using excessive force*** demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference ***the use of excessive force*** and the fabrication of official reports to cover up the Defendant Officer' misconduct". (Opposition to Motion to Dismiss ("Opposition to MtD"), Dkt. No. 40, at 5:3-5; 5:13-16 (emphasis added).) Plaintiff further argued that Chief Bidou ratified the "custom, culture and practice of ***using excessive force***" (Opposition to MtD at 10:7-11 (emphasis added)), and that the 20 prior incidents of "police misconduct" alleged in the FAC, 19 of which dealt with excessive force, supported Plaintiff's allegations of a custom, pattern, and/or practice. (Opposition to MtD at 11:19-25.) The only time the Opposition to the MtD referred to claims of racial profiling was to argue that such claims supported Plaintiff's state law claims for negligence and violation of the Bane Act claim. (Opposition to MtD at 16:5-7; 20:2-4.)

The Court's order denying the Motion to Dismiss the *Monell* claim noted that the Opposition argued Plaintiff had adequately pled a *Monell* claim because "she alleges past incidents ***of excessive***

2

*force* that establish a pattern of misconduct and ratification". (Order on Motion to Dismiss, Dkt. No. 43, at 4:2-5 (emphasis added).) It further noted that the allegations "about prior incidents *of excessive force*" could support a *Monell* claim. (Order at 4:15-17 (emphasis added).) The Court then analyzed the similarity of the force used in the alleged prior incidents with the force used in this case, ***without any mention whatsoever of racism or misconduct other than excessive force*** and concluded the *Monell* claim was sufficient to survive the Motion to Dismiss. (Order at 5:22-6:2 (emphasis added).) Plaintiff admitted at her deposition that she has no reason to believe the officers pulled her over because of her race. (Deposition of Plaintiff ("Plaintiff's Depo."), attached to the Declaration of Corey C. Wilson ("Wilson Decl.") as **Exhibit A** at 100:3-8.) Plaintiff's counsel first began to assert that Plaintiff's *Monell* claim included a component for racism or racial profiling in Spring 2025. (Wilson Decl. at ¶3.) Counsel for the CITY sent Plaintiff's counsel a correspondence on May 22, 2025 disputing that assertion. (Wilson Decl. at ¶3; **Exhibit B**.)

To date, Plaintiff has taken the depositions of Defendants Jordon Patzer and Colin Eaton, the CITY'S Rule 30 designee ("Person Most Knowledgeable" or "PMK") regarding certain police practices, CITY employees Steve Darden and Stephanie Sifuentes, and former CITY employees/contractors Ron Tabron, John Whitney, and Andrew Bidou. (Wilson Decl. at ¶4.) Plaintiff's notice of the PMK deposition sought testimony on six categories related to police practices, all of which the witness testified about. (Wilson Decl. at ¶5.) Plaintiff's counsel devoted a substantial amount of time in the deposition of Steve Darden discussing her own personal interactions with Lt. Darden on Facebook, a section of the transcript which spans more than 20 pages. (Wilson Decl. at ¶6.) The majority of the depositions of Stephanie Sifuentes and Ron Tabron focused on the CITY'S police hiring practices **after** the subject incident. (Wilson Decl. at ¶7.) Ron Tabron and Chief Shawny Willaims were not even hired by the CITY until after the subject incident. (Deposition of Ron Tabron ("Tabron Depo."), attached to the Wilson Decl. as **Exhibit C**, at 157:3-7; Motion at 5:20-21).)

Former Deputy Chief Gomez, whom Plaintiff's counsel contends she need to depose, thereby exceeding the limit imposed by FRCP 30(A)(2)(A), filed a lawsuit in April 2025 against the CITY alleging wrongful termination. (Gomez Complaint, Plaintiff's Exhibit 4.) He alleges he worked for the

3

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

CITY for less than 10 months, from 2023 to 2024 – more than 4 years after the subject incident. (Gomez Complaint at 2:10-11; 3:17-18.) He alleges internal affairs were behind schedule and vaguely alleges he was retaliated against for reporting and addressing mishandling of internal affairs investigations and instances of "potential officer misconduct". (Gomez Complaint at 2:20-21; 4:24-5:9.) None of his allegations relate to excessive force or excessive force investigations. None of his allegations relate to conduct prior to the subject incident. None of his allegations relate to any of the officers involved in the subject incident. Indeed, he did start working for Vallejo PD until four (4) years after the incident.

Plaintiff also now seeks to extend the 10-deposition limit in order to take the deposition of former CITY Public Information Officer Christina Lee, who filed a 21-page lawsuit against the CITY alleging retaliation on February 20, 2025. (Lee Complaint, Plaintiff's Exhibit 5.) Lee alleges she began working for the CITY in March 2020, almost a year after the subject incident. (Lee Complaint, 5:18-20.) She worked in the City Manager's office, not with or for the police department. (Lee Complaint at 5:21-25.) She alleges she reported bullying, harassment, intimidation, coercion, and threatening of staff by other employees in the City Manager's office. (Lee Complaint at 2:5-15.) None of her allegations pertain to reporting or observing misconduct by police officers. None of her allegations relate to conduct prior to the subject incident. None of the allegations pertain to any of the officers involved in the subject incident.

Captain John Whitney testified that Chief Andrew Bidou directed that then-City Attorney Kelly Trujillo should be included in meetings and communications. (Deposition of John Whitney ("Whitney Depo."), attached to the Wilson Decl. as **Exhibit D**, as 89:17-90:7.) He stated that the reason for this was so that documents would be protected by the attorney-client privilege and would not be publicly released. (Whitney Depo. at 90:24-91:2.) Chief Bidou was asked at his deposition about the practice and he stated that it had nothing to do with public records laws. (Deposition of Andrew Bidou ("Bidou Depo."), attached to the Wilson Decl. as **Exhibit E** to the Wilson Decl., at 82:13-20.) When Whitney was asked directly whether City Attorney Trujillo directed him to conceal or destroy records, or to otherwise do something that he believed was wrong or illegal, Whitney answered no. (Whitney Depo. at 91:13-92:6.)

4

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

Captain Whitney testified that in 2011, he was investigating a homicide when the suspects told officers that Lt. Darden was having an affair with their mother. (Whitney Depo. at 142:3-19.) He claims that when that information was revealed, his sergeant at the time, Kevin Bartlett, stopped the interview, took the recording, and let the suspects go. (Whitney Depo. at 143:14-144:3.)  He alleges that an investigation was conducted which showed Lt. Darden was using sick time to visit the suspect's mother, but that Captain Horton told him Lt. Darden was going out on Family Medical Leave Act ("FMLA") leave, no internal affairs investigation was conducted, and it would be handled by Captain Horton himself, the then-lieutenant. in professional standards. (Whitney Depo. at 142:15-20; 144:12-20.)  In a 2013 story regarding a separate incident involving allegations of excessive force against Lt. Darden, a media outlet quoted Captain Horton as saying that he could not discuss Lt. Darden's personnel file or any discipline, but "If I'm tell you that we conducted an internal affairs investigation, there was a disposition with the officer, that's the answer to your question". (Plaintiff's Exhibit 9.)  Captain Whitney testified that he was told by some unidentified source that the internal affairs investigation was conducted into who had leaked video of the incident to the media rather than into Lt. Darden's use of force. (Whitney Depo. at 51:15-52:9.)

Lt. Darden has been deposed in this matter.  He testified that he was aware of allegations that another officer, Mat Mustard, had made racist comments to officer Jason Scott. (Deposition of Steve Darden ("Darden Depo."), attached as **Exhibit F** to the Wilson Decl. at 47:2-15.)  Neither Scott nor Mustard are alleged to have had any involvement in the subject incident.

### III.    LEGAL ARGUMENT

**A.    Legal Standard**

In considering whether to allow a party to take exceed the limit of ten depositions, the court will consider whether (1) the discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information; and (3) the burden or expense of the proposed discovery outweighs its likely benefit. (*Thyukkuttathil v. Keese*, 294 F.R.D. 601, 602 (W.D. Wash., Nov. 13, 2013).)  In weighing the burden against the benefit, the court should consider the needs

5

of the case, the amount in controversy, the parties' resources, the importance of the issues in the litigation, and the importance of the proposed discovery. (*Ibid.*)

**B.     Plaintiff's *Monell* Claim Does Not Include Racial Profiling and Allegations Related to Employment Discrimination Are Not Proportional to the Needs of this Case**

Plaintiff's *Monell* claim does not include racial profiling. To state a *Monell* claim, the plaintiff must establish a policy, custom or practice by the entity which was "the actionable cause of the claimed injury". (*Estate of Osuna v. County of Stanislaus*, 392 F.Supp.1162, 1172 (E.D. Cal. 2019) (internal quotations omitted).) "[T]he factual allegations of a complaint asserting a *Monell* claim must give the defendant fair notice of what the claim is and the grounds upon which it rests". (*Id.* at 1174 (internal quotations omitted).)  Here, Plaintiff's *Monell* claim is focused entirely on excessive force. The allegations in the FAC and even Plaintiff's arguments opposing the Motion to Dismiss focused entirely on excessive force. They had *nothing* to do with racial profiling. In fact, the Court's order focused specifically on the similarities between the subject incident and the past incidents of excessive force which Plaintiff included in the FAC as the basis for finding Plaintiff's allegations sufficient. The Court did not find, because Plaintiff neither alleged nor argued, that Plaintiff had alleged sufficient facts to state a *Monell* claim based on racial profiling. Plaintiff is now attempting to create an entirely different claim, after the pleadings have been settled and without seeking leave to amend, to argue for a vastly expanded scope of discovery. More importantly, even if Plaintiff could establish that there *was* an unconstitutional policy, custom, or practice related to racial profiling, she cannot establish that such a policy *caused* the subject incident. Plaintiff admitted at deposition that she has no reason to believe that her being pulled over had *anything* to do with her race. Plaintiff's counsel details in her supporting declaration her longstanding history of litigating these types of claims against the CITY. Given the focus on issues and time periods with such tenuous connections to Plaintiff's case, it appears this is an effort to gather evidence for other cases in which Plaintiff's counsel litigates against the CITY.

Even if Plaintiff's *Monell* claim included a racial profiling component, her efforts to conduct substantial discovery into allegations of employment discrimination are not proportional to the needs of the case. Employment discrimination allegations are substantially different from allegations that police officers are racially profiling drivers. Any relevance to claims of an unconstitutional policy, custom, or

6

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

practice of racial profiling, is extremely attenuated. This attenuation is particularly problematic given the fact that neither Officer PATZER nor Officer EATON are alleged to have been involved in *any* of the alleged incidents of employment discrimination or harassment and that Plaintiff admits she has no reason to believe she was pulled over because of her race. Employment discrimination cases are frequently extremely complex, involving dozens of witnesses and thousands or even tens of thousands of documents. Allowing these depositions is not simply a matter of taking one or two additional depositions; in order to defend itself from Plaintiff's claims the CITY would very likely be forced to conduct its own depositions and to introduce its own evidence to counter Plaintiff's assertions regarding the alleged racially discriminatory incidents, some of which go back decades. This is in addition to the costs associated with having to involve the attorneys for both the CITY and the two employment plaintiff's if Plaintiff is permitted to depose them. The burden is massive and the potential benefit extremely limited.

To the extent Plaintiff's claims rest on allegations that Officer EATON personally had a history of treating African American subjects differently, Plaintiff has already deposed Officer EATON and intends to depose Lt. Robinson, whom she contends has evidence related to specific incidents involving Officer EATON. Discovery into employment discrimination allegations, none of which involve Officer EATON, offers extremely limited, if any, additional information. It would be needlessly cumulative. Its potential relevance is *de minimis* and is far exceeded by the burden of essentially forcing the CITY to litigate multiple complex employment discrimination cases in the context of this limited excessive force case. The motion should be denied as it relates to depositions concerning allegations or claims of racial profiling or employment discrimination.

**C.      Plaintiff Could Have Deposed the Requested Individuals and Instead Elected to Pursue Irrelevant Testimony**

Plaintiff has had ample opportunity to depose the individuals whose depositions she is seeking by way of this motion. She instead elected to pursue the depositions of individuals with extremely limited information, if any, that is relevant to this matter. Plaintiff has taken the depositions of two witnesses, Ron Tabron and Stephanie Sifuentes, which focused almost entirely on the CITY'S police hiring practices *after* the subject incident. While the CITY'S hiring practices at the time the involved officers

7

were hired may have some conceivable relevance to Plaintiff's *Monell* claims, its hiring practices and changes to the practices that occurred *after* the subject incident clearly do not. These depositions were entirely unnecessary for this case. Similarly, Plaintiff has noticed the deposition of former Chief Shawny Williams, who was hired almost a year after the subject incident. While he conceivably could have some relevant information (and so Defendants have not sought a protective order to prohibit his deposition), the information he can provide that is relevant to the issues at hand; namely the CITY'S customs, policies, and practices surrounding excessive force which existed at the time of the incident, is likely to be extremely limited. Indeed, Plaintiff's counsel has made clear that one of, if not the, primary areas of inquiry for Chief Williams will be alleged racial discrimination and harassment against him personally. As outlined above, Plaintiff's *Monell* claim in this case does not include racial profiling and allegations of employment discrimination are not relevant to this excessive force case. Plaintiff has nevertheless decided she feels it is necessary to depose Chief Williams as one of her ten depositions. She is certainly entitled to make these decisions. What she is not entitled to do is take these depositions of borderline relevance and then claim the depositions she elected to forego are crucial to her case. That she elected to pursue other depositions with minimal relevance is not a basis for forcing the CITY to incur substantial additional attorney's fees and costs in defending further depositions. Whether she elected to do so in a misguided belief that the information was relevant to her claims or because it was an opportunity for her attorney to obtain information for use in other cases against the CITY, Plaintiff had ample opportunities to obtain the information she claims is necessary in discovery. Her motion to exceed the discovery limits should be denied.

**D.   Good Cause Does Not Exist to permit Plaintiff to Take the Requested Additional Depositions**

    **1.   Joseph Gomez**

There is no good cause to depose Joseph Gomez. Gomez was employed by the CITY for less than ten months, starting *four years* after the subject incident. He cannot provide relevant testimony regarding the CITY'S culture, customs, or practices which may have caused or contributed to the subject incident. To the extent there may be some minimal relevance to testimony he may offer about the culture, customs, or practices of the CITY years after the fact, it is far outweighed by the burden of

8

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

allowing this discovery. First, Plaintiff's evidence regarding Gomez' allegations is based solely on an unverified complaint. Second, Gomez, is involved in active litigation against the CITY. Deposing him will necessarily require involving his current counsel and the attorneys representing the CITY in that lawsuit. Involving several additional sets of attorneys will dramatically increase the time and cost of scheduling, preparing for, and completing the deposition. Further, as discussed above, employment litigation is complex and both witness and document intensive. If Plaintiff is permitted to depose Gomez, the CITY will likely be required to introduce facts and witnesses to counter his testimony. It would, in effect, be forced to litigate Gomez' employment case within this excessive force case while simultaneously litigating it in Gomez' actual lawsuit. This would impose a significant cost and undue burden on the CITY and would needlessly complicate and delay this action. This burden far outweighs any minimal relevance to Gomez' testimony. In addition, the Gomez lawsuit was filed in April, 2025, before many of the depositions were taken in this matter. Plaintiff had ample opportunity to conduct discovery, whether written or by deposition. Instead, she chose to pursue other depositions and not conduct written discovery on the issues she now claims are critical to her case. There is no good cause to permit her to exceed the discovery limits to depose Gomez, and her motion should be denied as to him.

**2.  District Attorney Krishna Abrams**

There is no good cause to depose Krishna Abrams. She is not a proper deponent in this case. She is not alleged to have had any involvement in this incident whatsoever. She is not an employee of the CITY. As the District Attorney, she is an elected official for the County of Solano, an entirely separate entity. Whether she investigated reports of misconduct and if not, why not, has no bearing whatsoever on Plaintiff's claims against the CITY in this matter. Further, Plaintiff has already deposed Captain Whitney. Any information District Attorney Abrams could provide about her conversation with Captain Whitney would be duplicative and needlessly cumulative. There is no good cause to allow Plaintiff to exceed the discovery limits to depose District Attorney Abrams, and her motion should be denied as to District Attorney Abrams.

**3.  Judge Kelly Trujillo**

There is no good cause to depose Kelly Trujillo. Judge Trujillo is a sitting Solano County

9

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

Superior Court judge. Plaintiff seeks to depose her specifically regarding her work as an attorney for the CITY. Where a party seeks to depose the opposing party's attorney, they bear the burden of establishing a legitimate basis for doing and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome. (*American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 587 (S. D. Cal. 1995).) Plaintiff has failed to meet that burden. She incorrectly asserts that Whitney testified that Judge Trujillo "inserted herself" into communications related to critical incident reviews "in an attempt to circumvent public records law". Whitney testified that he was directed to include Judge Trujillo in communications, but he did *not* testify that this was done in order to violate the law. To the contrary, Chief Bidou specifically testified that the decision to include Judge Trujillo had nothing to do with public records laws. Plaintiff has offered no basis or authority for her contention that a City Attorney being involved in communications regarding CITY business is a violation of public records law. Whitney was asked specifically whether Judge Trujillo or anyone else from the CITY'S City Attorney office directed him to do anything unlawful, and he could not identify any such direction. Plaintiff contends that notes in the IA Pro system "indicate" that Judge Trujillo directed the discussion of tort claims while *Monell* cases were pending, but Plaintiff offers no evidence to support this statement beyond Plaintiff's counsel's own assertion in her declaration. There are no further details about how the notes "indicate" this and the documents themselves are conspicuously absent from Plaintiff's motion. Plaintiff bears the burden of establishing that there is an appropriate line of inquiry on which Judge Trujillo could be deposed; i.e. one which would not be barred by the attorney-client or attorney work-product privileges. She has completely failed to do so. This deposition would be improper even if it did not exceed the discovery limits. Plaintiff has certainly not established a good cause to exceed the discovery limits to take it. The motion should be denied as to Judge Trujillo.

### 4. Christina Lee

There is no good cause to depose Christina Lee. Like Gomez, Lee was not even hired by the CITY until after the subject incident; in her case almost a year later. Lee did not even work in, or with, the police department. Her lawsuit alleges nothing related to her witnessing or reporting police misconduct, let alone excessive force. The misconduct which she claims to have reported relates only to

10

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

employees within the City Manager's office. There is no evidence that Lee can offer *any* testimony of *any* relevance to Plaintiff's causes of action in this case. Like Gomez, Plaintiff's allegations related to Lee are based solely on an unverified complaint. Like Gomez, Lee is involved in active litigation against the CITY. Her deposition would require involving both Lee's counsel and counsel representing the CITY in that lawsuit, with the associated increase in costs. Like Gomez, permitting Plaintiff to depose Lee would essentially require the CITY to litigate that employment case in this matter. Lee's complaint is 21 pages. It details a wide range of interactions with many individuals in the City Manager's office over several years. None of these interactions or individuals have any bearing on this case but, if she is deposed, they would necessarily need to be inquired into. Again, this is not a question of just one additional deposition. Several additional witnesses may be necessary to address Lee's claims. It would dramatically increase the costs and scope of discovery in this case and would impose a significant burden on the CITY. This burden far outweighs the extremely limited relevance of any information Lee may be able to offer. In addition, this lawsuit was filed in February, 2025. Plaintiff had ample opportunity to conduct discovery, whether written or by deposition. She chose to pursue other depositions instead. She has not established good cause to exceed the discovery limits to depose Lee, and her motion as to Lee should be denied.

**5.  Jason Scott**

There is no good cause to depose Jason Scott. Plaintiff's allegations related to Scott pertain only to Scott being subjected to racist comments by another officer, Mat Mustard. Neither Scott nor Mustard are alleged to have any involvement whatsoever in this matter. The only relevance Plaintiff assigns to this testimony is that she claims it is relevant to her purported racial profiling *Monell* claim. As discussed above, the *Monell* claim in this case does not include racial profiling. There is no relevance to employment discrimination or harassment allegations related to uninvolved officers. Although there is no active litigation involving Scott's allegations, the burden on the CITY of permitting Plaintiff to depose Scott is still significant. The CITY may need to retain separate counsel for Scott, as he was a CITY employee at the time of the events in question. It would very likely need to introduce additional facts and witnesses to discuss its investigation and response to the reported comments. All of this would

11

serve to increase the costs of this litigation. Plaintiff has had ample opportunity to conduct written discovery about this incident and to inquire about it in the depositions of other witnesses. The burden on the CITY far outweighs the lack of relevance of these employment discrimination allegations to this excessive force case. Plaintiff has not established good cause to exceed the discovery limits to depose Scott, and her motion should be denied as to him.

### 6.     Captain Lee Horton

There is no good cause to depose Lee Horton. He is not alleged to have had any involvement either in the incident or in any investigation. Captain Horton is alleged to have placed Lt. Darden on FMLA leave following an assertion by murder suspects that Lt. Darden was having an affair with their mother. Plaintiff describes this as "blackmail" information that "would have subjected Darden to discipline and termination" despite there being no evidence that Lt. Darden was himself involved in any way in the murder investigation or any decisions regarding the suspects and that the only misconduct Lt. Darden was alleged to have engaged in was a personal affair with no bearing on his work and using sick time incorrectly. She misrepresents that Captain Whitney testified that Captain Horton placed Lt. Darden on FMLA leave to "bypass" an investigation. Captain Whitney testified to no such thing. On the contrary, he testified that an investigation *was* conducted. He simply stated he was told no IA investigation would be conducted. Plaintiff also overstates Captain Whitney's testimony regarding the 2013 incident involving Lt. Darden, asserting that no investigation was conducted into Lt. Darden (and therefore that Captain Horton "lied" to the media). Again, what Captain Whitney testified to was that the *IA* investigation was into the source of the leak, not Lt. Darden. He did not testify regarding whether any other sort of investigation or force review was conducted. Lt. Darden, who was present at the scene of the subject incident, but otherwise is not alleged to have had any involvement, has been deposed in this case. Plaintiff has had ample opportunity to ask about these two incidents which took place years before the subject incident. Plaintiff's speculation and conjecture regarding "cover-ups" is not sufficient to justify permitting her to exceed the discovery limits in this case. She could have deposed him instead of one of the other minimally-relevant depositions she elected to take. She chose not to. Plaintiff has not established good cause to exceed the discovery limits to depose Captain Horton, and her motion should

12

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR

be denied as to him.

### 7. PMK On Tort Claims/IA Pro

Plaintiff certainly could have elected to take a deposition of the CITY'S PMK on the handling of tort claims and IA Pro entries. She could choose to take this deposition as one of her two remaining depositions. She elected not to. She chose to instead pursue testimony from multiple individuals hired after the subject incident with little to no relevant information. She should not be rewarded for that poor decision by being allowed to exceed the limits on discovery. Plaintiff has propounded written discovery on this issue and can continue to do so. She has had ample opportunity to obtain this information in discovery. Her motion should be denied as to the proposed PMK as well.

## IV. CONCLUSION

For the above reasons, Plaintiff's Motion to Exceed Deposition Limits should be denied.

Dated: June 25, 2025                                   BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

By: */s/ Corey C. Wilson*
Richard W. Osman
Sheila D. Crawford
Corey C. Wilson
Attorneys for Defendants
CITY OF VALLEJO, COLIN EATON and JORDON PATZER

13

DEFENDANTS CITY OF VALLEJO, COLIN EATON, AND JORDON PATZER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND DEPOSITION LIMITS SET FORTH IN F.R.C.P. 30(a)(2)(A)
*Jenkins, v. City of Vallejo, et al.* U.S.D.C. Eastern District of California Case No.: 2:19-cv-01896-TLN-SCR