UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEYANA JENKINS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF VALLEJO, et al.,<br><br>　　　　Defendants. | No. 2:19-CV-1896 TLN SCR<br><br><br>ORDER |

Plaintiff Deyana Jenkins is suing the City of Vallejo (the "City") and individual police officers for violating the Fourth Amendment and state laws during a 2019 traffic stop. Plaintiff's filed a motion seeking leave to take additional depositions. ECF No. 71. Plaintiff's request follows the discovery of new information which Plaintiff characterizes as highlighting systemic racism and cover-ups in the City's police force and government. While the record Plaintiff relies upon is troubling, most the depositions Plaintiff seeks are unwarranted given the claims at issue in this case and the scope of relevant evidence. Except with respect to an additional Rule 30(b)(6) deposition concerning newly-disclosed Government Tort Claims and Citizen Complaints, Plaintiff's motion will be denied.

**I.   Background**

　**A. Plaintiff's Allegations and Claims**

Plaintiff's First Amendment Complaint ("FAC") is the operative pleading, and alleges as follows: On April 15, 2019, at 11:45 p.m., Jenkins and three other African-American women

1

were driving down Tennessee Street in Vallejo. ECF No. 35 at ¶ 12. Defendant Vallejo Police Department Officers Eaton and Patzer stopped the car, drew their weapons, and told Plaintiff and the occupants of the car to put their hands up. ECF No. 35 at ¶ 14. One of the officers alleged that one of the four had made a gesture out of the car and that the officers thought the four African American were four African American men. ECF No. 35 at ¶ 14. One of the officers asked Jenkins for her license. She reached into her purse and realized it was not there, that it must be in her other purse, but when she went to get it, the officers falsely claimed she was resisting arrest, handcuffed her, and tried to drag her out of the car. ECF No. 35 at ¶ 15. The officers used excessive force to throw her out of the car, pin her to the ground, and tase her. ECF No. 35 at ¶¶ 16-17. The officers also prevented Jenkins from reaching her phone to call her mom, and another from using her phone to record what was happening. ECF No. 35 at ¶¶ 16, 18. After being taken to the hospital, Plaintiff was booked and held on false accusations of resisting arrest, plus infractions that had nothing to do with her driving. ECF No. 35 at ¶ 20. The District Attorney did not pursue charges, but the police officers were never disciplined or retrained by Defendant Chief Bidou for what happened that night. ECF No. 35 at ¶¶ 21, 23, 25.

Plaintiff alleges that her experience is part of a pattern and practice of Vallejo police using excessive force and misconduct against citizens without ever being disciplined or retrained. ECF No. 35 at ¶ 28. Plaintiff asserts the following causes of action: (1) a Fourth Amendment violation by Eaton and Patzer; a *Monell* claim against the City and Chief Bidou for the failure to discipline and retrain officers for this kind of conduct, therefore knowing of being in a position to have known about it; a negligence claim as to Eaton, Patzer, and the City; a violation of the Bane Act (Cal. Civ. Code 52.1) as to Eaton, Patzer, and the City; battery as to Eaton, Patzer, and the City; and assault as to Eaton, Patzer, and the City. ECF No. 35 at 23. ECF No. 35 at 18-23. The Court dismissed the *Monell* claim against Chief Bidou and Plaintiff's claim for injunctive relief. ECF No. 43. Accordingly, this case now concerns only damages.

**B. Plaintiff's Discovery Motion**

Plaintiff's motion initially sought to take seven additional depositions, but Plaintiff subsequently withdrew the request to depose former Assistant City Attorney Kelly Trujillo. ECF

2

No. 77. Plaintiff's request is based on her recent discovery of new information concerning the history of police racism in Vallejo, heretofore hidden Government Tort Claims and Citizen Complaints, and the forcible silencing of whistleblowers. ECF No. 71 at 2. Plaintiff argues that this discovery is relevant to her *Monell* claim seeking to hold the City liable for unconstitutional Fourth Amendment practices.

Specifically, Plaintiff notes the following: Plaintiff deposed Vallejo Police Captain John Whitney, the former Acting Chief of Police, in May 2025. Whitney testified that while he was acting Chief, he was persecuted for exposing misconduct at Vallejo Police Department ("VPD"). ECF No. 71 at 4. For example, the police would only produce a carefully selected set of documents in response to requests from criminal Defendants and civil Plaintiffs, as opposed to the "voluminous amounts of actual Government Tort Claims and Citizen Complaints."[1] ECF No. 71 at 5. Captain Whitney reported this to Solano County District Attorney Krishna Abrams, who never investigated or acted on this information. ECF No. 71 at 6. Vallejo Assistant City Attorney Kelly Trujillo would conceal Critical Incidents Reviews for officer-involved shootings from public disclosure by having herself improperly added to all email chains so they constituted attorney-client communications. ECF No. 71 at 6. Whitney also spoke to former Detective Jason Scott, an African American who left the Department due to rampant racism. ECF No. 71 at 8.[2]

Whitney believes VPD has a "pattern and practice of concealing excessive force," including two prior incidents of Defendant Eaton targeting disabled Black people with physical violence. ECF No. 71 at 9.[3] Whitney also testified about the aftermath of an incident in 2013, where Officer Steve Darden was caught on bodycam assaulting a crime victim who complained about police response time. ECF No. 71 at 10. Plaintiff asserts that although Lt. Lee Horton told

---

[1] Plaintiff's counsel has been litigating *Monell* claims against the City since 2015. In previous cases, the City disclosed government tort claims and citizen complaint records for only 35 victims. Through recent disclosures in this action, the City has now produced 185 such records. ECF Nos. 71 at 5, 71-1 at ¶¶ 12-14

[2] During an April 28, 2025 deposition, Lieutenant Steve Darden confirmed that Scott left due to racism. ECF No. 71 at 9.

[3] Lieutenant Herman Robinson is the supervisor who wrote memos for these incidents. ECF No. 71 at 9.

3

media that an investigation into that incident was underway, the investigation actually focused on who leaked the footage, not on disciplining Darden. ECF No. 71 at 9-10. Whitney also testified that in the 2012 murder investigation of Enrique Jimenez, an interviewed suspect provided information that would have subjected Officer Darden to discipline. ECF No. 71 at 10-11. Officers destroyed the interview tape and let the murderer go. *Id*.

Plaintiff also focuses on other sources of information concerning systemic problems in Vallejo. In February 2025, the City's former Public Information Officer Christina Lee filed a complaint alleging wrongful termination in retaliation for her reporting violations of local, state, and federal laws, rules, codes, statutes, regulations to the top levels of city management. ECF No. 71-6. Then, in April 2025, VPD Deputy Chief Joseph Gomez filed a lawsuit, *Gomez v. City of Vallejo*, in Solano County Superior Court, alleging that in 2023 he discovered unlawful conditions at the Police Department and tried reporting them. ECF No. 71-5. Gomez alleged that Internal Affairs was concealing incidents involving the command staff members. ECF No. 71 at 6. They tried bribing him to keep silent, and when he refused, they had a police captain stalk him until they found a way to fire him in 2024. ECF No. 71 at 7.

Plaintiff also details the deposition of Ron Tabron, a 30-year police veteran tasked with assessing and modernizing the recruitment and hiring process at VPD. ECF No. 71 at 7. Tabron testified that Former Police Chief Shawny Williams told him that when he was brought in to reform the police, he was subjected to racism and received death threats that eventually drove him to resignation. ECF No. 71 at 7.

Plaintiff raises other issues concerning the discovery process. Defendants rescheduled Chief Williams' deposition without explanation, and agreed to produce Lt. Robinson but have not. ECF No. 71 at 3-4, 8. Defendant also has not produced records for the prior incidents involving Eaton and disabled Black people, including Robinson's memos. ECF No. 71 at 9-10.

////

////

////

////

Plaintiff has not moved to compel on these specific issues.[4]

Plaintiff has already taken or scheduled the ten depositions presumptively allowed by Rule 30.  Plaintiff filed the instant motion on June 11, 2025, seeking to take the following additional depositions: Gomez, Abrams, Trujilo (request since withdrawn), Lee, Scott, Horton, and a Rule 30(b)(6) deponent concerning Internal Affairs and/or the Professional Standards Division's intake of Government Tort Claims and Citizen Complaints.  Defendants filed an opposition on June 25, 2025, and Plaintiff filed a reply brief.  The Court heard argument on the motion on July 31, 2025.

## II. Legal Standards

### A. Scope of Discovery & Additional Depositions

Federal Rule of Civil Procedure 30(a)(2) presumptively limits the number of depositions in a civil matter to ten per side.  However, Rule 26(b)(2) allows a court to "alter the limits in these rules on the number of depositions ... under Rule 30."  The presumptive limit of ten depositions per side is intended to "promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." *Thykkuttathil v. Keese*, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (quoting Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 30 Advisory Committee's Note (1993)).  "A party seeking to exceed the presumptive limit bears the burden of making a particularized showing of the need for additional depositions." *Rounds v. Bd. of Trustees of Cal. State Univ.*, 2022 WL 17978501, at *2 (E.D. Cal. Dec. 28, 2022) (citations and quotations omitted).  "[C]ourts have found it proper to deny additional depositions where they would be cumulative, without proper purpose, e.g., there is no evidence they would reveal anything other than what a party had already obtained, the party had ample opportunity to obtain the information by discovery in the action, or they would create an unreasonable burden or expense." *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *3 (S.D. Cal. Aug. 19, 2016).

---

[4] Defendants state that Plaintiff will have the opportunity to depose Lieutenant Robinson, who has information about incidents regarding Eaton, as one of the last two depositions in the original ten.  ECF No. 72 at 10.

### B. *Monell* Liability

Because Plaintiff seeks these additional depositions to support her *Monell* claim, the Court here describes the various theories on which such a claim can be vindicated. Local governments can be sued under § 1983 when the unconstitutional action as issue "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [government's] officers." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Even when a practice his not captured by official policy, it may be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167–168 (1970)). There are a variety of ways through which a practice can be shown to constitute such a custom or usage.

#### 1. Ratification

A practice may be deemed a municipal policy through ratification by a supervisor. For example, if a subordinate's decision-making is subject to review by policymakers, the ratification of "a subordinate's decision and the basis for it" may convert that decision to municipal policy. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Even without express ratification, a practice with the force of policy may be imputed when a subordinate makes "a series of decisions" that "manifested a 'custom or usage' of which the supervisor must have been aware." *Id.* at 130.

#### 2. Failure to Train or Supervise

A failure to train employees can only constitute the basis for a *Monell* claim if the failure results in "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference only arises when, based on the duties of a group of officers or employees, "the need for more or different training is so obvious, and the inadequacy [is sufficiently] likely to result in the violation of constitutional rights[.]" *Goodin v. City of Glendora*, 380 F. Supp.3d 970, 995 (C.D. Cal. 2019) (quoting *Canton*, 489 U.S. at 390). Policymakers must therefore have been on "actual or constructive notice" of the likelihood that the violation would occur. *Goodin*, 380 F. Supp. at 995. Additionally, evidence that a single

1  violation resulted from a single instance of following the policy or training is not enough to
2  demonstrate deliberate indifference. *Id.* at 995-996.

3  In addition to deliberate indifference, the plaintiff must demonstrate that the deficiency in
4  training was "*closely related* to the ultimate injury." *Lee v. City of Los Angeles*, 250 F.3d 668,
5  681 (9th Cir. 2001) (quoting *Canton*, 489 U.S. at 391) (emphasis original).  This means that a
6  plaintiff's own constitutional injury would have been avoided but for this failure to train. *Lee*,
7  250 F.3d at 681.  This does not entirely preclude evidence as to what the relevant patterns and
8  practices were after such injury.  The Ninth Circuit has held that post-incident evidence "is not
9  only admissible for purposes of proving the existence of a municipal defendant's policy or
10  custom, but may be highly probative with respect to that inquiry." *Henry v. Cnty. of Shasta*, 132
11  F.3d 512, 519 (9th Cir. 1997).

12  Some courts recognize that failure to supervise can similarly constitute a basis for *Monell*
13  liability. *See Hyer v. City & Cty. of Honolulu*, Case No. 19-00586 HG-RT, 2020 U.S. Dist.
14  LEXIS 223621 at *25 (D. Haw. Nov. 30, 2020) (citing *Lee*, 250 F.3d at 681).  The court in *Hyer*
15  reiterated the need to show that "more than one employee was inadequately trained or
16  supervised." *Hyer*, 2020 U.S. Dist. LEXIS 223621 at *26 (citing *Ismail v. Freeman*, 936
17  F.Supp.2d 1157, 1164 (C.D. Cal. 2012)).  Employees must have committed a "pattern of similar
18  constitutional violations," with notice to decisionmakers that "a course of training is deficient in a
19  particular respect" and resulted in such violations. *Hyer*, 2020 U.S. Dist. LEXIS 223621 at *26
20  (citing *Connick*, 563 U.S. at 62).

21  **III.   Analysis**

22  **A.  Parties' Arguments**

23  Plaintiff argues that the depositions conducted so far have revealed records and testimony
24  of patterns and practices previously unknown to Plaintiff's counsel, despite working on similar
25  civil rights cases involving the City for years.  Plaintiff notes that this includes new information
26  about how the City has "cover[ed] up" broad misconduct.  ECF No. 71 at 11-12.  As Plaintiff sees
27  it, *Monell* liability is designed to protect the community against systemic misconduct, which
28

weighs in favor of the additional depositions. As a result, any burden on Defendants is outweighed by public need. ECF No. 71 at 12.

Defendants argue these additional depositions would be unreasonably cumulative or duplicative, involve information that is obtainable from some other source that is less burdensome, and that Plaintiff has had ample opportunity to obtain the information sought. ECF No. 72. Defendants believe that Plaintiff wasted many of the ten depositions to which she was presumptively entitled. ECF No. 72 at 10. Defendants also argue the burden or expense of the proposed discovery outweighs its likely benefit. Defendants note that in briefing the motion to dismiss, Plaintiff's *Monell* claim was characterized as involving "excessive force," as opposed to other alleged misconduct. ECF No. 72 at 5-6. Consequently, taking depositions concerning employment discrimination (as would be true of some of the proposed additional deponents) is not proportionate to the needs of the case. ECF No. 72 at 9.

### B. Most of Plaintiff's Requested Depositions Are Unwarranted

The parties do not appear to dispute the proposition that Plaintiff's *Monell* claim warrants broad discovery concerning policing practices within the City. But the parties dispute the need for the additional depositions at issue here, with Defendants arguing that those depositions are excessive in light of (1) the other discovery to which Plaintiff has access and (2) the scope of Plaintiff's *Monell* claim, which is under the Fourth Amendment and involves excessive force. The Court largely agrees with Defendants.

Plaintiff is entitled to take an additional Rule 30(b)(6) deposition concerning the newly discovered Government Tort Claims and Citizen Complaints and their handling by Internal Affairs and/or the Professional Standards Division. While there has already been a Rule 30(b)(6) deposition, that deposition occurred before Plaintiff learned about the numerous additional claims and complaints that had not previously been disclosed. ECF No. 72 at 6. This additional Rule 30(b)(6) deposition will involve information relevant to Plaintiff's *Monell* claim, which may include whether and how action (or inaction) within Internal Affairs/Professional Standards Division effectively ratifies unlawful policies or constitutes an alleged failure to train or supervise.

8

However, the anticipated testimony of other proposed deponents is not sufficiently relevant to policies and practices concerning excessive force. As to Lee, the City's former Public Information Officer, the deposition would purportedly concern the misconduct alleged in her lawsuit against the City in Solano County Superior Court. *See* ECF No. 71-6. Although a police corruption scandal did lead to the City Manager's resignation in June 2021, the remaining allegations do not relate to police misconduct. *Id.* at ¶ 24. At most, one of the reasons for the City's retaliation against Ms. Lee concerned her refusal to fire a City employee for not providing the login credentials for VPD's social media accounts to its analyst. *Id.* at ¶ 28. Plaintiff has failed to demonstrate that any illegal conduct that Lee observed as a City employee was connected to Fourth Amendment violations committed by police officers during traffic stops.

Other of the requested depositions would concern employment discrimination within VPD. For example, Plaintiff seeks to depose Detective Jason Scott, an African American who left the Department due to rampant racism. ECF No. 71 at 8. Plaintiff argues that this deposition would help demonstrate the "overt racism" that pervades VPD, specifically to the extent that the City allowed known racists to remain employed as police officers. ECF No. 73 at 6.

Detective Scott's experience of workplace racism is not sufficiently connected to the constitutional theory and allegations in this case. Plaintiff does not allege an equal protection violation. Moreover, liability for failure to train or supervise officers must stem from a "pattern of similar constitutional violations." *Hyer*, 2020 U.S. Dist. LEXIS 223621 at *26. The Fourth Amendment violation that occurs when a patrol officer uses excessive force during a police stop, as Officers Eaton and Patzer allegedly did with Plaintiff (see ECF No. 35 at 17), is not sufficiently similar to the discriminatory workplace that Detective Scott allegedly experienced.[5]

---

[5] Wide-ranging discovery concerning institutional racism within a police department could be warranted in an excessive force case alleging both Fourth Amendment and equal protection violations. Numerous studies have shown that law enforcement agencies subject Black people to use of force that is disproportionate in frequency and severity. *See* Sarah Mikva Pfander, *The Path to Municipal Liability for Racially Discriminatory Policing*, 69 UCLA L. Rev. 1270, 1279 (2023). But in order to prove a *Monell* equal protection violation, a plaintiff would have to show (1) municipal policymakers knew of a policy or customary practice with a disparate impact and still pursued it "at least in part because of, not merely in spite of, its adverse effects" on the protected class; or (2) policy makers were deliberately indifferent to the racial animus of their subordinates. *Floyd v. City of New York*, 959 F. Supp. 2d 540, 571, 665 (S.D.N.Y. 2013).

A deposition of Gomez is not warranted because his experience, in 2023, concerning alleged high-level misconduct and corruption at VPD, is too attenuated by time and topic to be relevant to *Monell* liability concerning a 2019 traffic stop and use of force incident. Similarly, District Attorney Abrams played no role in creating municipal policy, supervising police officers, or ratifying the decisions of police officers. Her testimony is not sufficiently relevant. Horton's proposed deposition, premised primarily on his alleged role in covering up a 2013 incident, is also too attenuated by time and topic.

The Court need not address whether broader discovery would be warranted if a claim for injunctive relief remained in the case, as Plaintiff's request for injunctive relief was dismissed.

## CONCLUSION

In accordance with the above, **IT IS HEREBY ORDERED** that except with respect to the additional Rule 30(b)(6) deposition concerning the newly discovered claims and complaints, Plaintiff's motion for additional depositions is **DENIED**.

DATED: August 19, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

---

Discovery concerning such theories of municipal liability might properly explore broad patterns of institutional racism.